IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSUE ALVAREZ, Individually and on Behalf of All Others Similarly Situated, GENNISE GARCIA, HERIBERTO LOPEZ, JR., DILLON SILVA, STEVEN R. SILVA, FELIPE PEREZ, and FRANCISCO PEREZ, *Plaintiffs,* vs. GRYPHON HOLDCO, LLC, *Defendant.* | § § § § § § § § § § § § § § § | SA-18-CV-01298-FB-ESC |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant Gryphon Holdco, LLC's ("Gryphon Holdco"), Motion to Dismiss and Compel Arbitration [#30]. Also before the Court is Plaintiff Josue Alvarez's ("Alvarez") Response to Gryphon Holdco's Motion to Dismiss and Compel Arbitration [#31] and Gryphon Holdco's Reply in Support of Its Motion to Dismiss and Compel Arbitration [#32]. The Honorable Fred Biery referred all pretrial proceedings in this case to the undersigned for disposition pursuant to Rule 72 of the Federal Rules of Civil Procedure and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#22]. The undersigned has authority to enter this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Gryphon's Motion to Dismiss and Compel Arbitration be **GRANTED IN PART**. The District Court should compel the parties to arbitrate their claims on

1

an individual basis; should sever and strike the damages limitation contained in the arbitration agreement; and should stay rather than dismiss this suit while the arbitration is pending.

## I. Factual and Procedural Background

This case arises under the Fair Labor Standards Act of 1938 ("the FLSA"), as amended, 29 U.S.C. §§ 201–219 (2017). Alvarez, individually and on behalf of all others similarly situated, filed a complaint against Emergency Site Protection, LLC ("Site"), Gryphon Oilfield Solutions, LLC ("Gryphon Oilfield"), and Sanchez Oil & Gas Corporation ("Sanchez") [#1], alleging wage-and-hour claims under the FLSA. To date, six opt-in plaintiffs have filed consents to join this action: Gennise Garcia, Heriberto Lopez, Jr., Dillon Silva, Steven R. Silva, Felipe Perez, and Francisco Perez [#8, #9, #10, #19].[1]

Alvarez subsequently filed his First Amended Collective Action Complaint [#25], which is the live pleading in this case. Alvarez's Amended Complaint removed Gryphon Oilfield as a defendant and added Gryphon Holdco. On May 2, 2019, Alvarez voluntarily dismissed his claims against Site [#28]. On May 23, 2019, Gryphon Holdco filed a motion to dismiss and to compel arbitration [#30]. That motion is ripe and the subject of this Report and Recommendation.[2]

---

[1] In this Report and Recommendation, the undersigned will collectively refer to Alvarez and the six opt-in plaintiffs as "Plaintiffs."

[2] An initial pretrial conference was held on June 18, 2019, at which the Court heard argument on Gryphon Holdco's motion, as well as the Motion to Compel filed by Sanchez [#41]. On August 23, 2019, Alvarez voluntarily dismissed his claims against Sanchez [#46], and the Court therefore dismissed Sanchez's motion as moot [#47].

## II. Analysis

The Court should grant the motion to compel arbitration, compel the parties to arbitrate Plaintiffs' claims on an individual basis, sever and strike the damages limitation contained in the arbitration clause, and stay rather than dismiss this case during the pendency of the arbitration.

**A.  The parties agree that valid arbitration agreements govern this dispute.**

The parties do not dispute that this case involves contracts with valid arbitration provisions. The Fifth Circuit has established a two-step inquiry for determining whether the parties have agreed to arbitrate a claim. *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). To resolve these issues, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The parties also agree that Texas law governs the interpretation of the parties' contract. In the absence of a valid delegation clause, it is for the courts, and not an arbitrator, to decide whether the parties have agreed to arbitrate. *See Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). It is also undisputed that the Federal Arbitration Act ("the FAA"), 9 U.S.C. §§ 1–16 (2017), applies in this case. Under the FAA, arbitration agreements are to be enforced unless they are invalid under principles of state law that govern all contracts. 9 U.S.C. § 2; *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004).

The record reflects that each of the Plaintiffs signed an independent-contractor agreement with Site, a subsidiary of Gryphon Holdco, or Emergency Sphinx Protection, LLC ("Sphinx"), Gryphon Holdco's predecessor-in-interest. Each of these agreements contains a mandatory arbitration provision. The agreements with Site ("the Site Agreements") contain the following arbitration clause:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be resolved by arbitration conducted by the Commercial Division of the American Arbitration Association and in accordance with the rules thereof, or in any other convenient forum agreed to in writing by the parties. The arbitrator shall be authorized to determine only those matters submitted to it . . . . Any arbitration award shall be final and binding . . . .

(Site Agreement[3] [#30-2] at § 19(b).) The agreements with Sphinx ("the Sphinx Agreements") contain the following arbitration clause:

> (a) <u>Applicable Rules</u>. Any controversy or dispute between Contractor and Company . . . , arising from or in any way related to the performance of Services, this Agreement or the termination thereof, . . . shall be resolved exclusively by final and binding arbitration administered by JAMS under its Employment Arbitration Rules & Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness then applicable to the dispute. . . .
>
> (b) <u>All Disputes Must be Arbitrated</u>. It is the intent of the Parties hereto that all disputes between the must be arbitrated, expressly including, but not limited to, . . . (iii) any claim for compensation or benefits, including any claim under the Fair Labor Standards Act, or any other federal or state statute or regulation related to payment of wages . . . .

(Sphinx Agreement[4] [#30-2] at § 14.)

---

[3] Opt-In Plaintiffs Lopez, Steven Silva, and Felipe Perez signed an independent-contractor agreement with Site. A copy of each of these agreements is attached as part of Exhibit A to Gryphon Holdco's Motion to Dismiss and Compel Arbitration [#30-2].

Plaintiffs concede that the parties have entered into valid arbitration agreements and that their claims are within the scope of those agreements. But Plaintiffs contend that several provisions in the independent contractor agreements are unconscionable and should, therefore, be "stricken and severed" before arbitration is compelled. (Pl.'s Resp. to Def. Gryphon Holdco, LLC's, Mot. to Dismiss and Compel Arbitration [#31] at 1.) Gryphon Holdco argues that these are issues for the arbitrator.

**B.     The only unconscionability argument the Court can consider is Plaintiffs' challenge to the damages limitation contained in the arbitration agreement.**

Plaintiffs challenge four types of provisions in the Site and Sphinx Agreements as unconscionable: (1) the indemnification provisions, (2) the waiver of claims against company clients, (3) the waiver of claims against individual employees, and (4) the limitation on damages. The majority of these arguments are for the arbitrator, not this Court, to decide. The only contractual provision the Court should address prior to compelling arbitration is the limitation on damages.

Like other contracts, arbitration agreements may be invalidated by "generally applicable contract defenses arising under state law, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). There are two types of challenges to the validity of a contract under the FAA: (1) a challenge to the validity of the agreement to arbitrate and (2) a challenge to the contract as a whole, "either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S.

---

[4] Alvarez and Opt-In Plaintiffs Garcia, Dillon Silva, and Francisco Perez signed an independent-contractor agreement with Sphinx. A copy of each of these agreements is attached as part of Exhibit A to Gryphon Holdco's Motion to Dismiss and Compel Arbitration [#30].

440, 444 (2006)). The first type of challenge is relevant to a court's determination of whether the arbitration agreement at issue is enforceable. *Id.* The latter is not. Because a written agreement to arbitrate is valid and enforceable under the FAA notwithstanding the validity or invalidity of the contract in which it is contained, a party's challenge to another provision of the contract or to the contract as a whole does not prevent a court from enforcing a specific agreement to arbitrate. *Id.*

Accordingly, the Supreme Court "require[s] the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Id.* at 71. *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (holding that federal courts do not have authority to consider claims of fraud in the inducement of a contract generally where there is an otherwise valid and enforceable agreement to arbitrate the parties' dispute); *Begole v. N. Miss. Med. Ctr., Inc.*, 761 Fed. App'x 248, 252 (5th Cir. 2019), reh'g denied (Mar. 12, 2019) (holding that district court correctly referred unconscionability disputes to arbitration where dispute centered on issues applicable to contract as a whole, as opposed to arbitration clause specifically).

Plaintiffs agree that they must arbitrate their claims against Gryphon but maintain that "several provisions in the two forms of contracts in issue are unconscionable." (Pls.' Resp. [#31] at 1.) Plaintiffs ask the Court to sever and strike these provisions based on the severability clauses in the contracts.[5] Under Texas law, "[u]nconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the

---

[5] Both the Site and Sphinx Agreements contain severability clauses, which permit the Court to sever any provision of the contracts held to be invalid, illegal, or unenforceable and enforce the remainder of the contract. (Site Agreement § 19; Sphinx Agreement § 17.)

6

arbitration provision itself." *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). The party seeking to invalidate a contractual provision bears the burden to prove unconscionability. *Id.* at 572.

The Texas Supreme Court has held that "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 360 (Tex. 2008); *see also Buckeye Check Cashing*, 546 U.S. at 445 ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."). "In determining an agreement's essential purpose, the issue is 'whether or not parties would have entered into the agreement absent the unenforceable provisions.'" *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 230 (Tex. 2014) (quoting *In re Poly-Am.*, 262 S.W.3d at 360).

The only argument by Plaintiffs that specifically challenges the arbitration agreement, as opposed to raising general contract defenses as to other provisions of the contract, is Plaintiffs' challenge to the limitation of damages. Accordingly, the Court may evaluate unconscionability and the propriety of severance as to this clause only. Plaintiffs' arguments as to the provisions of the Site and Sphinx Agreements that concern indemnification and the waiver of claims against company clients and individual employees are for the arbitrator, not this Court, to decide.

i. Indemnification Provisions

Because Plaintiffs' arguments as to the indemnification provisions in the Site and Sphinx Agreements do not challenge the validity of the agreement to arbitrate, this Court lacks authority under the FAA to sever and strike these clauses as unconscionable.

The indemnification provision in the Site Agreements provides as follows:

> Contractor shall defend, indemnify, and hold harmless the Company . . . from and against all claims . . . (ii) resulting from any claim that

7

> Contractor is not an independent contractor; . . . or (iv) resulting from a breach by Contractor of any representation, warranty, covenants or obligation under this Agreement.

(Site Agreement [#30-2] at § 9.) The Sphinx Agreements contain a similar provision:

> Contractor shall indemnify and hold Company . . . harmless from and against any claims . . . (ii) resulting from any claim that Contractor is not an independent contractor, . . . or (iv) resulting from a breach by Contractor of the covenants contained in this Agreement.

(Sphinx Agreement [#30-2] at 79.) Plaintiffs asks the Court to construe the indemnity clauses as substantively unconscionable on the basis that they force Plaintiffs "to indemnify Gryphon against their own FLSA claims." (Pls.' Resp. [#31] at 4.)

Notwithstanding the fact that Plaintiffs seem to have misinterpreted the meaning of these contractual provisions,[6] these challenged provisions are not found in the arbitration clauses in the contract but are entirely separate provisions generally applicable to the contract regardless of forum—whether judicial or arbitral. Insofar as the Court is aware, Gryphon Holdco has not yet asserted a claim for indemnification against any Plaintiff based on this provision, and ultimately whether or not Plaintiffs were or were not independent contractors or employees of Gryphon Holdco is a fact-intensive inquiry the parties will litigate before the arbitrator. Plaintiffs make no argument that the indemnification provisions render the *arbitration agreement* itself unconscionable. "Only if the arbitration clause can be attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." *Will–Drill Res, Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003). Plaintiffs' arguments

---

[6] The more likely intent of the parties was to encompass circumstances such as personal-injury actions where an injured party is attempting to sue Gryphon Holdco based on a theory of *respondeat superior* liability for the acts of one of its contractors. These provisions would require contractors such as Plaintiffs to defend against any claim that they are the employees of Gryphon Holdco so as to impute liability to Gryphon Holdco.

regarding the substantive unconscionability of the indemnification clauses in the parties' agreement should therefore be raised before the arbitrator.

      ii.      <u>Waiver of Claims against Company Clients and Individual Employees</u>

Plaintiffs also contend that provisions in the Site and Sphinx Agreements waiving all claims against clients and individual employees of Gryphon Holdco are unconscionable because they effectively waive any FLSA claim Plaintiffs have against Sanchez Oil, an alleged joint employer and former Defendant in this action, or any other individual defendant Plaintiffs may want to add to this lawsuit. (Pls. Resp. [#31] at 5.) The client-waiver provision states:

> Contractor agrees to seek recourse solely against Company, and not against Company's client, in any of its capacities, for any claims arising under this Agreement.

(Sphinx Agreement [#30-2] at 15.) The Site Agreement contains almost identical language:

> Contractor agrees to seek recourse solely against Company, and not against Company client . . . for any claim arising under this Agreement.

(Site Agreement [#30-2] at 81.) Similar language waives claims against Gryphon Holdco's individual members, officers, directors, and employees in both contracts:

> It is expressly understood and agreed by Contractor that . . . any liability of Company . . . arising under or in connection with this Agreement is hereby expressly waived by Contractor against each and every one of its employees, members, officers or directors of Company and its assets . . . .

(Sphinx Agreement [#30-2] at 17; Site Agreement [#30-2] at 82.)

Again, Plaintiffs do not argue that these provisions somehow make the arbitration agreement unconscionable or independently affect the agreed-upon arbitral forum. Rather, Plaintiffs' attack on these contractual waivers is limited to a general assertion that the waivers "undermine the FLSA" generally. (Pls.' Resp. [#31] at 5.) Such arguments are to be raised before the arbitrator, if at all. *See Rent-A-Ctr*, 561 U.S. at 71. The record reflects that Plaintiffs

9

have voluntarily dismissed their claims against Sanchez [#46], the only alleged joint employer in this case, and have not yet asserted any claims against an individual employee of Gryphon Holdco. Even if the Court were to have authority to address the challenge to these provisions prior to compelling arbitration, Plaintiffs' arguments are far too speculative to be able to carry their burden to prove unconscionability.

The undersigned notes that the fact that one of these waiver provisions is found within the section of the contract addressing arbitration (Section 14) does not alter the Court's conclusion that Plaintiffs' arguments are for the arbitrator not this Court to decide. (*See* Sphinx Agreement [#30-2] at 15.) The parameters established by the Supreme Court in *Prima Paint* and its progeny are applicable even where the underlying agreement is an agreement to arbitrate, as opposed to some other contract, such as the independent contractor agreement at issue here. The contract in *Rent-A-Center* was itself an arbitration agreement. *Rent-A-Ctr.*, 561 U.S. at 72. Notwithstanding this fact, the Court still enforced the written provision to settle the controversy by arbitration, holding that any challenge to the validity of the agreement as a whole was for the arbitrator. *Id.* It is only "where a party challenges the validity of the agreement to arbitrate in particular [that] the district court must weigh in on whether the specific decision to agree to arbitrate was unconscionable." *Begole*, 761 Fed. App'x at 251.

    iii.    Limitation on Damages

Finally, Plaintiffs argue that the limitation on damages contained in the arbitration agreement is unconscionable because it prohibits the arbitrator from awarding liquidated damages and attorney's fees in direct contravention of the FLSA. (Pls.' Resp. [#31] at 6.) The challenged provision provides that "in no event is the arbitrator authorized or empowered to award punitive damages *or damages in excess of actual direct damages*." (Site Agreement [#30-

2] at 81 (emphasis added).) This language is found in the same paragraph containing the parties' agreement to arbitrate and expressly addresses the arbitrator's authority with respect to damages.

The right of an employee to recover liquidated damages and attorney's fees from an employer who violates the FLSA is expressly conferred by statute and cannot be waived by contract or agreement. 29 U.S.C. § 216(b); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Plaintiffs therefore contend that the parties' arbitration agreement is unconscionable unless this provision is severed and stricken from the contract. The undersigned agrees. Unlike Plaintiffs' challenges to the indemnification and waiver clauses, this argument directly challenges the damages limitation as to the agreement to arbitrate.

The Supreme Court has recognized, albeit in dicta, that such challenges may be appropriate for the courts. *See Rent-A-Ctr.*, 561 U.S. at 74 ("It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court.") (emphasis in original). Various courts have indeed severed and stricken fee-shifting and damages provisions as unconscionable prior to compelling arbitration where the enforcement of the provisions would render the arbitration itself substantively or procedurally unconscionable. *See, e.g.*, *Coronado v. D.N. W. Houston, Inc.*, No. CIV.A. H-13-2179, 2015 WL 5781375, at *9–*10 (S.D. Tex. Sept. 30, 2015) ("Because the [contracts] have provisions allowing the defendant clubs to recoup attorneys' fees from the plaintiffs even if they prevail on their FLSA claims, the arbitration clauses are unenforceable unless those provisions are severable.")

The Fifth Circuit's decision in *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) is particularly illustrative. In that case, the Fifth Circuit affirmed a district court's order compelling

arbitration after severing and voiding a contractual clause prohibiting the award of punitive damages—because the prohibition was unlawful in the context of the plaintiff's Title VII claim. "Because Title VII provides for statutory punitive damages, the district court found the ban on such damages unenforceable." *Id.* at 478 n.14. The Fifth Circuit agreed with that determination, reasoning that the agreement's ban on punitive and exemplary damages contravened Title VII; therefore, "the lifting of that illegal restriction enhance[d] the ability of the arbitration provision to function fully and adequately under the law." *Id.* at 478 & n.14. The same result is compelled here.

"By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). "An arbitration agreement covering statutory claims is valid so long as 'the arbitration agreement does not waive substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights.'" *In re Poly-Am.*, 262 S.W.3d at 352 (quoting *In re Halliburton*, 80 S.W.3d at 572). As previously stated, substantive rights under the FLSA—such as the right to attorney's fees and liquidated damages—cannot be waived. *See Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 164 (5th Cir. 2015) ("The general rule establishes that FLSA claims . . . cannot be waived.").

Under Texas law, "[i]n applying the unconscionability standard, the crucial inquiry is whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights." *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 894 (Tex. 2010). If the damages limitation is enforced in this case, it would prevent the arbitrator from awarding liquidated damages or

12

attorney's fees, in direct contravention of the FLSA. *See* 29 U.S.C. § 216(b) (stating that an employer who violates the FLSA is liable for the unpaid wages and "an additional equal amount as liquidated damages"); *Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, No. CIV.A. H-11-3025, 2013 WL 487032, at *7 (S.D. Tex. Feb. 6, 2013), *aff'd*, 562 Fed. App'x 182 (5th Cir. 2014) ("Fee awards are mandatory for prevailing plaintiffs in FLSA cases."). Accordingly, the elimination of the invalid waivers of Plaintiffs' FLSA rights "serves to expand the scope of arbitration rather than reduce or impair it, thereby freeing that provision to fulfill its intended function." *Hadnot*, 344 F.3d at 478.

Accordingly, the Court should sever the limitation of damages from the remainder of the contract before arbitration is compelled. The Texas Supreme Court has held that "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *In re Poly-Am.*, 262 S.W.3d at 360. "In determining an agreement's essential purpose, the issue is 'whether or not parties would have entered into the agreement absent the unenforceable provisions.'" *Venture Cotton Co-op.*, 435 S.W.3d at 230 (quoting *In re Poly-Am.*, 262 S.W.3d at 360). Gryphon Holdco has not advanced any argument that persuades the Court that the parties would not have entered into an agreement to submit to an arbitral forum but for the damages limitation. This provision is severable under principles of Texas contract law.

**C.    The claims should proceed in arbitration on an individual, not collective, basis.**

Having determined that the parties' arbitration agreement is valid after severing the limitation on damages, the Court should compel Plaintiffs' claims to individual, as opposed to collective, arbitration. Section 14(f) of the Sphinx Agreements provides that "Contractor expressly waives the right to participate in any class or collective action and, rather, expressly

13

agrees that Contractor will resolve any dispute or claim in a single action between only Contractor . . . and Company and Company's other contractors, customers, clients, owners, members, directors or officers . . . ." (Sphinx Agreement [#30-2] at 15.) The Site Agreements are ambiguous as to the availability of class or collective arbitration, and "[c]ourts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019). Accordingly, the Court should order that the arbitration proceed with respect to each Plaintiff individually.

**D.     This case should be stayed, not dismissed during the pendency of the arbitration.**

Finally, the parties disagree as to whether the case should be dismissed or stayed pending completion of the arbitrations. Plaintiffs seek a stay, while Gryphon Holdco contends that dismissal is appropriate. The FAA instructs a court to stay an action on application of one of the parties if the court determines that the parties have agreed to arbitrate a claim brought before it and that the issue is in fact arbitrable. *See* 9 U.S.C. § 3. The Fifth Circuit, however, has held that a court may dismiss, rather than stay, a case "when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original). The court reasoned that, in such circumstances, "retaining jurisdiction and staying the action will serve no purpose." *Id.*

Plaintiffs maintain that the Court should exercise its discretion to stay this case because, if arbitration does not proceed for any reason, the allowable time to file suit possibly will have passed. Indeed, the Fifth Circuit has held that a "demand for arbitration does not toll the statute of limitations." *Fonseca v. USG Ins. Servs., Inc.*, 467 Fed. App'x 260, 261 (5th Cir. 2012) (quoting *U.S., for & on behalf of Portland Const. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1013 (5th Cir. 1976)). In dismissing the plaintiff's claims as time-barred, the *Fonseca*

court explained that "Fonseca could have (and should have) filed her suit within the statute of limitations and, thereafter, sought a stay of the action pending arbitration. Such a course would have guaranteed that the lawsuit was brought within the limitations period without waiving any right to arbitration which may have existed." *Id.* (internal citation omitted). Since *Fonseca*, several courts in the Western District of Texas have stayed a case based on the plaintiffs' concern "that if arbitration does not proceed for any reason, the allowable time to file suit possibly will have passed." *See, e.g.*, *Valdez v. Texas Taco Cabana, L.P.*, No. A-14-CA-389-SS, 2014 WL 2980270, at *2 (W.D. Tex. July 1, 2014). Accordingly, the undersigned recommends that the District Court "exercise its discretion to stay this case to preserve a forum for redress in the event that the arbitration fails to resolve the claims." *Steadfast Ins. Co. v. Frost Bank*, No. SA-17-CV-1222-XR, 2018 WL 3865415, at *2 (W.D. Tex. Aug. 14, 2018).

### III. Conclusion and Recommendations

Having considered the motions, the applicable legal authorities, and the entire record in this matter, the undersigned recommends that Defendant Gryphon Holdco, LLC's, Motion to Dismiss and Compel Arbitration [#30] be **GRANTED IN PART.**

It is also recommended that the following unconscionable provision be **SEVERED** from the Site Agreements: "[I]n no event is the arbitrator authorized or empowered to award punitive damages or damages in excess of actual direct damages," § 19(b).

It is also recommended that Plaintiffs be **COMPELLED TO ARBITRATION ON AN INDIVIDUAL BASIS** and that their claims be **STAYED** pending completion of the arbitrations.

It is finally recommended that this case be **ADMINISTRATIVELY CLOSED** pending completion of the arbitrations.

15

### IV. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed within fourteen (14) days after being served with a copy of same, unless this time period is modified by the district court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a de novo determination by the district court. *See Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 18th day of September, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE